UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM J. McKINNEY,<br>    Plaintiff, | :<br>:<br>: | PRISONER CASE NO.<br>3:17-cv-1663 (JCH) |
| v. | :<br>: | |
| NEW HAVEN POLICE DEP'T, et al.,<br>    Defendants. | :<br>: | NOVEMBER 6, 2017 |

## INITIAL REVIEW ORDER

**I.     INTRODUCTION**

The plaintiff, William J. McKinney ("McKinney"), currently incarcerated at Bridgeport Correctional Center in Bridgeport, Connecticut, has filed a Complaint (Doc. No. 1) pro se under section 1983 of title 42 of the United States Code.  McKinney sought leave to proceed in forma pauperis (Doc. No. 2).  On October 6, 2017, the court granted McKinney's application.  (Doc. No. 7).  The Complaint names nine defendants: the New Haven Police Department, Chief Campbell, Officer N. Gotzer, Officer Evan M. Kelly, Officer J. Moore, EMT Jane Doe, EMT John Doe 1, John Doe 2, and the City of New Haven.  McKinney seeks damages and an order that the City of New Haven use some of the damages awarded to install sufficient lighting on the New Haven upper and lower green and to install night vision cameras throughout the downtown area.

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks

monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.

In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[ ]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

## II.   ALLEGATIONS[1]

On July 13, 2017, at 11:07 p.m., McKinney was waiting for the bus on the corner of College and Chapel Streets in New Haven.  John Doe 2 approached him and swung a rock in a sock, striking McKinney in the left side of his face and head.  The rock was oval-shaped and about the size of a baseball.  John Doe 2 said nothing.

McKinney assumed a defensive stance and began backing away.  John Doe 2 pursued McKinney on the Upper Green and struck him in the left temple with the rock at

---

[1] The following allegations are set forth in the Complaint.

2

least twice more.  McKinney began walking back toward College Street.  John Doe 2 ran up behind McKinney to hit him in the back of the head.  McKinney turned and fought with John Doe 2.

McKinney lost consciousness.  When he regained consciousness, he was on one knee and John Doe 2 was swinging the weapon toward McKinney's head.  McKinney moved his head at the last moment and the rock missed him.  He continued to make his way to the Lower Green in a defensive stance.  John Doe 2 followed, hitting McKinney in the head three more times.

McKinney ran toward the fountain.  He heard John Doe 2 pursuing him and knew that he was close.  McKinney was short of breath and disoriented.  He stopped and turned around.  John Doe 2 was swinging the weapon in a downward motion toward McKinney's head.  McKinney panicked.  He ran toward John Doe 2 causing the rock to hit his bicep rather than his head.

McKinney collided with John Doe 2.  Their feet became entangled, and McKinney fell backward, landing on his back.  John Doe 2 fell forward, landing on his face.  As John Doe 2 was getting back up to hit him again, McKinney got to his side and repelled the attack.  McKinney got to his knees and saw John Doe 2's hand coming out of his back pocket.  McKinney thought John Doe 2 had a knife.

McKinney repelled the attack.  A bystander told him to stop and McKinney did. McKinney walked away in shock.  He headed back to College and Chapel Streets because, during the altercation, John Doe 2, had ripped McKinney's house keys from

around his neck. McKinney wanted to call the police, but he was afraid to do so because he was on probation.

McKinney assumed that John Doe 2 would be cared for because the bystander was wearing hospital scrubs and, as McKinney was walking away, he saw a glow from a cell phone. He assumed that bystander was summoning help.

McKinney reached the corner of College and Chapel Streets. As he was putting his ripped shirt back on, Officer Moore approached McKinney and asked what had happened. McKinney stated that he had been attacked by an unknown male with a weapon. He described the weapon as a blackjack on a rope. At that time, McKinney only knew that the weapon had a two-to-three foot reach and something hard and solid at the end. Officer Moore handcuffed McKinney and told him that he was only being detained.

An emergency response vehicle arrived. With Officer Moore standing by, McKinney told EMT Jane Doe and EMT John Doe 1 that he had been hit in the head with a hard object about six or seven times. The EMTs were about to take McKinney to the hospital when Officer Moore ordered them to just clean him up. The EMTs wiped McKinney's face and hands. McKinney told them he thought his knuckle was broken, but they ignored him.

Officer Moore put McKinney in the police vehicle. When McKinney asked if he was under arrest, Officer Moore stated that John Doe 2 was in critical condition. McKinney was brought to the detective unit at the New Haven Police Department and questioned. He lost and regained consciousness several times during the questioning.

4

The officers refused to take him to the hospital or provide medical attention. Finally, after five or six hours, McKinney was taken to the hospital by ambulance. He was given an emergency CT scan and diagnosed with a concussion.

An EMT told McKinney that he was the third person that week that the EMT had taken to the hospital after being hit by someone wielding a rock in a sock. McKinney was later diagnosed as suffering from post-concussion syndrome. He suffers between four and five headaches per day and has short-term memory loss.

Two months later, McKinney learned that defendant Evans had rolled John Doe 2 onto his back causing John Doe 2 to begin coughing up blood. Defendant Gotzer confirmed this in her police report. Rather than help John Doe 2, defendant Kelly began searching his pockets for identification and then moved key evidence in the case. Defendant Gotzer watched. McKinney contends that defendants Kelly and Gotzer contributed to John Doe 2's injuries. As a result of the seriousness of John Doe 2's injuries, McKinney was charged with assault. He contends that he used only reasonable force to repel John Doe 2's attack.

### III. ANALYSIS

McKinney alleges that defendants Moore, EMT Jane Doe and EMT John Doe 1 denied him needed medical attention. He argues that the New Haven Police Department ignored the negligent actions of defendants Kelly and Gotzer toward John Doe 2. McKinney contends that the New Haven Police Department violated his right to due process because, in response to McKinney's attorney's request to preserve evidence, they stated that they have video surveillance footage only of the Lower Green. He contends that the New Haven Police Department failed to protect him from

harm at the hands of the person assaulting citizens with a rock in a sock. McKinney also argues that the City of New Haven is responsible for failing to install night vision camera and sufficient lighting in a high crime area.

    A.    <u>Deliberate Indifference to a Serious Medical Need</u>

McKinney first alleges that defendants Moore, Jane Doe and John Doe 1 failed to provide medical treatment for head injuries even though he told them that he had been hit in the head six or seven times with a hard object. McKinney also alleges he suffered a concussion and, as a result, continues to experience multiple headaches each day and has been diagnosed with post-concussion syndrome.

McKinney was an arrestee at all times relevant to this claim. There is a split of authority within the Second Circuit whether claims for denial of medical care brought by pretrial arrestees are governed by the Fourth or Fourteenth Amendment. See <u>Goodwin v. Kennedy</u>, No. CV 13-1774(SJF)(AKT), 2015 WL 1040663, at *7–*8 (E.D.N.Y. Mar. 10, 2015) (citing cases). The court need not resolve that issue at this time, however, because McKinney's claim should proceed under either standard.

The Fourth Amendment standard requires the court to determine whether the alleged denial of medical treatment was objectively unreasonable "focusing on the circumstances confronting the police at the time of the arrest without regard to their underlying motives or attitude towards the suspect." <u>Lewis v. Clarkstown Police Dep't</u>, No. 11 Civ. 2487(ER), 2014 WL 6883468, at *7 (S.D.N.Y. Dec. 8, 2014) (quoting <u>Freece v. Young</u>, 756 F. Supp. 699, 701 (W.D.N.Y. 1991)). When assessing the objective reasonableness of an officer's conduct in denying medical care, a court considers four

6

factors: "(1) whether the officer had notice of the arrestee's medical need; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) law enforcement's interests, including administrative, penological, or investigatory concerns." Id. (citing Williams v. Rodriguez, 509 F.3d 392, 403 (7th Cir. 2007)).

McKinney alleges that he told defendants Jane Doe and John Doe 1 that he had been hit in the head multiple times with a hard object. These statements were made within the hearing of defendant Moore. Thus, he alleges that EMTs and Officer Moore were aware of his medical need. McKinney alleges that he suffered a concussion. Although a mild concussion has been held insufficient to constitute a serious medical need, McKinney's concussion may have been more serious. See Miller v. UConn Correctional Managed Health Care, No. 3:10-CV-616(RNC), 2013 WL 5963078, at *2 (D. Conn. Nov. 6, 2013) (noting that mild concussion is not considered a serious medical need to satisfy the objective component of the deliberate indifference standard). The court concludes that McKinney has plausibly alleged a serious medical need. The EMTs wanted to take McKinney to the hospital, but defendant Moore ordered them to only clean McKinney up. No treatment was provided. At this stage of litigation, the court considers the allegations sufficient to plausibly allege a Fourth Amendment deliberate indifference claim.

The court next considers McKinney's allegations under the Fourteenth Amendment. Courts formerly applied the same standard to claims for deliberate indifference to medical needs under the Eighth and Fourteenth Amendments. That has changed. In Kingsley v. Hendrickson, ––– U.S. –––, 135 S. Ct. 2466 (2015), the

Supreme Court held that a pretrial detainee asserting an excessive use of force claim under the Fourteenth Amendment need only meet an objective standard by showing "that the force purposely or knowingly used against him was objectively unreasonable." Id. at 2473. A convicted inmate claiming excessive use of force under the Eighth Amendment must additionally meet a subjective standard by demonstrating that the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). The decision in Kingsley expressly dealt with an excessive use of force claim. While the Second Circuit has specifically applied Kingsley only to claims of unconstitutional conditions of confinement by pretrial detainees, the court has implied that Kingsley should be applied to all deliberate indifference claims of pretrial detainees. See Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) ("A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether through the use of excessive force, by deliberate indifference to the conditions of confinement, or otherwise."); see also Lloyd v. City of New York, 246 F. Supp. 3d 704, 718 (S.D.N.Y. 2017) (applying an objective analysis to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment). The Second Circuit determined that "the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id. Thus, the mens rea in a claim for deliberate indifference under the Fourteenth Amendment is defined objectively. Id.

To state a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his medical need was serious, see Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 492 U.S. 97, 104 (1976)), and that the defendants acted with a sufficiently culpable state of mind, which, in prisoner conditions cases, requires deliberate indifference to inmate health or safety, Darnell, 849 F.3d at 35. Under the first prong, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013). The deliberate indifference standard "contemplates a condition of urgency that may result in degeneration or extreme pain." Chance, 143 F.3d at 702. The second prong, or mens rea prong, is assessed objectively. See Darnell, 849 F.3d at 35. The defendants must "know, or should have known, that the condition posed an excessive risk to health or safety." Id. Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. See Kingsley, 135 S. Ct. at 2472 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

The court has determined that McKinney's allegations are sufficient, at this stage of litigation, to demonstrate a serious medical need. McKinney alleges that the EMTs wanted to take him to the hospital for examination and treatment, but defendant Moore prevented them from doing so. Instead they provided no treatment. The court concludes that McKinney alleges sufficient facts to show that the defendants should

9

have known that he required medical care and that failure to provide such care posed an excessive risk to his health.

B. Defendant Doe 2

McKinney includes as a defendant the person who assaulted him. Section 1983 of Title 42 of the United States Code provides relief only for claims against persons acting under color of state law. See 42 U.S.C. § 1983 ("Every person who, under color of any statute ordinance, regulation, custom, or usage, of any State . . . "). John Doe 2 is a private citizen, not a state or municipal employee.

The Supreme Court has set forth a two-part test to determine whether the actions of a private party may be attributed to the State so as to make the private party subject to liability under section 1983. First, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id.; see also Dahlberg v. Becker, 748 F.2d 85, 89 (2d Cir. 1984) ("to establish deprivation of a federally-protected right there must be both 'state action' and a 'state actor'"), cert. denied, 470 U.S. 1084 (1985).

John Doe 2 meets none of these requirements. Because Doe 2 was not acting under color of state law, McKinney cannot maintain a section 1983 claim against him,

and he is not a proper defendant in this case. Any claim against defendant Doe 2 is dismissed pursuant to section 1915A(b)(1) of title 28 of the United States Code.

C. <u>Defendants Kelly and Gotzer</u>

McKinney alleges that defendants Kelly and Gotzer were negligent in investigating the crime scene by turning John Doe 2 onto his back and then searching his pockets instead of taking action to prevent him from aspirating blood. He contends that these actions increased the severity of John Doe 2's injuries and, therefore, the severity of his charges.

Section 1983 does not afford a cause of action for police negligence. <u>Medeiros v. O'Connell</u>, 150 F.3d 164, 170 (2d Cir. 1998) (citing <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986) and <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986)). Thus, any section 1983 negligence claims against defendants Kelly and Gotzer are dismissed.

In addition, McKinney lacks standing to bring a state law claim that defendants Kelly and Gotzer's alleged negligence increased the severity of John Doe 2's injuries. In order to establish standing, "the plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." <u>Lexmark Intern, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1386 (2014) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). Plaintiff claims that he suffered the injury of being charged with a more serious offense because defendants' negligence exacerbated John Doe 2's condition. However, he has not plausibly alleged that the injury is "fairly . . . trace[able] to the challenged action of the

11

defendant, and not . . . the[e] result [of] the independent action of some third party not before the court." Lujan, 504 U.S. at 560. The independent action of the New Haven County State's Attorney led to the particular charges pending against McKinney in his state criminal case, not the conduct of defendants Kelly and Gotzer. McKinney may raise the defendants' alleged negligence in handling John Doe 2 in a potential defense to the causation element of the charge of assault in the first degree, see Conn. Gen. Stat. § 53a-59(a)(1), but he lacks standing to bring a state law negligence claim.

D. Defendants New Haven Police Department and Campbell

McKinney includes several claims against the New Haven Police Department. A municipal police department is not an independent legal entity and is not subject to suit under section 1983. See Rose v. City of Waterbury, No. 3:12cv291(VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013) (noting that courts within Connecticut have determined that state statutes do not include "provision[s] establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued . . . it is the municipality itself which possesses the capacity to sue and be sued") (internal quotation marks and citation omitted). Furthermore, a police department is not a person amenable to suit under 42 U.S.C. § 1983. See Nicholson v. Lenczewski, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (collecting cases). Thus, any claims against the New Haven Police Department are dismissed pursuant to 28 U.S.C. § 1915A(b)(1) as lacking an arguable legal basis.

In addition, McKinney names Chief Campbell. The only allegation against Chief

Campbell is that he was aware that someone was attacking people on the Upper and Lower Greens with a rock in a sock. The court assumes, therefore, that the claim against defendant Campbell is that he did not apprehend this person before he assaulted McKinney. "Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts . . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." Kafafian v. Young, 477 F. App'x 762, 763 (2d Cir. 2012) (quoting Martel v. Metro. Dist. Comm'n, 275 Conn. 38, 881 A.2d 194, 202 (2005) (internal quotation marks omitted)). The Supreme Court of Connecticut has found that "[b]ecause a police chief's authority to assign his officers to particular duties is deemed a matter that concerns the public safety, he may not be deprived of his power to exercise his own discretion and judgment as to the number, qualifications and identity of officers needed for particular situations at any given time." Coley v. City of Hartford, 312 Conn. 150, 164 (2014) (quoting Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 180 (1988). Campbell was not at the New Haven Green at the time of the attacks. Rather, his alleged failure to apprehend John Doe 2 was a consequence of his judgment about how to allocate officers. "[T]he general deployment of police officers is a discretionary governmental action as a matter of law." Id. Thus, defendant Campbell is immune from liability by state law on this claim. See Kafafian, 477 F. App'x at 763; Conn. Gen. Stat. § 52-557n(a)(2)(A).

  E.  <u>Defendant City of New Haven</u>

  Finally, McKinney names the City of New Haven as a defendant. He alleges that

the City failed to install sufficient lighting and night vision cameras on both levels of the New Haven Green, a high crime area, and that the lack of adequate surveillance cameras prevented him from obtaining the best evidence to defend himself in his criminal trial. He also alleges that the City of New Haven failed to protect him from the assault.

The Due Process Clause protects persons from "unjustified intrusions on personal security." Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008) (quoting Ingraham v. Wright, 430 U.S. 651, 673 (1977)) (internal quotation marks omitted). However, the Supreme Court has stated that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. (quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989)) (internal quotation marks omitted). Thus, the Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id.

There are two exceptions to this rule. First, the state or its agents may owe a duty to the victim of private violence if the state had a "special relationship" with the victim. Second, the state may have an obligation to protect the victim if the state created or increased the danger to the victim. Id. McKinney does not fall within either exception. First, he has no special relationship with the City of New Haven. See Ying Jing Gan v. City of New York, 996 F.2d 522, 533 (2d Cir. 1993) (defining special relationships as custodial relationships as between prison and inmate or mental

institution and involuntarily committed patient, or relationship between social services agency and foster child). Nor did the City of New Haven act to increase the risk of danger to McKinney. See id. (examples of increasing risk include police officers agreeing to permit person to assault victim, or standing by and watching assault, or police chief directing officers to ignore victim's complaints).

As neither exception applies in this case, McKinney has no constitutionally or federally protected right to special protection or better surveillance and lighting. McKinney's claims against the City of New Haven are dismissed pursuant to section 1915A(b)(1) of title 28 of the United States Code.

Any state law claim that McKinney could assert against the City of New Haven would be based on negligence in failing to ensure sufficient lighting and surveillance of the area. Decisions regarding lighting and camera locations involve an exercise of judgment. Therefore, as the action is governmental, i.e., discretionary, rather than ministerial, the City of New Haven is immune from such claims under state law, unless there is an applicable exception. See Elliott v. City of Waterbury, 245 Conn. 385, 715 A.2d 27, 41 (1998) (citations omitted); Conn. Gen. Stat. § 52-557n(a)(2)(A).

There are three exceptions to governmental immunity: first, if the circumstances make it apparent to public officials that failure to act would likely subject an identifiable person to imminent harm; second, if a statute specifically provides a cause of action against the municipality for failing to enforce certain laws; and third, if the acts involve malice, wantonness or an intent to harm rather than negligence. Id., 715 A.2d at 411 n.17. None of the exceptions are plausibly alleged here.

## IV. MOTION FOR APPOINTMENT OF COUNSEL

McKinney seeks appointment of pro bono counsel in this action pursuant to 28 U.S.C. § 1915. The Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel. See, e.g., Ferrelli v. River Manor Health Care Center, 323 F.3d 196, 204 (2d Cir. 2003); Hendricks v. Coughlin, 114 F.3d 390, 393 (2d Cir. 1997). The court repeatedly has advised the district courts of the importance of requiring an indigent to "pass the test of likely merit." Cooper v. A. Sargenti Co., 877 F.2d 170, 173-74 (2d Cir. 1989)). The court explained that "even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." Id. at 171.

The current record consists only of the Complaint. Without some evidence, the court cannot determine whether McKinney's remaining claim possesses likely merit. Accordingly, the Motion for Appointment of Counsel is denied without prejudice to renew at a later stage of litigation.

## ORDERS

All claims against defendants Doe 2, Kelly, Gotzer, Campbell, New Haven Police Department, and City of New Haven are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the claim for deliberate indifference to serious medical needs against defendants Moore, Jane Doe, and John Doe 1.

(1) **The Clerk shall** mail a waiver of service of process request packet containing the Complaint and this Order to defendant Moore at the New Haven Police Department, 1 Union Avenue, New Haven, CT 06519, within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth

(35) day after mailing.  If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him or her in individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send plaintiff a copy of this Order.

(3) The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) The court cannot effect service on defendants Jane Doe and John Doe 1 without their full names and service addresses.  McKinney shall obtain and file a notice

containing this information within **sixty (60) days** from the date of this Order.  Failure to do so will result in the dismissal of all claims against Jane Doe and John Doe 1.

(8) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court.  Failure to do so will result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

(10) The Motion for Appointment of Counsel (**Doc. No. 3**) is **DENIED** without prejudice.

**SO ORDERED.**

Dated this 6th day of November 2017 at New Haven, Connecticut.

                                                  /s/ Janet C. Hall
                                                  Janet C. Hall
                                                  United States District Judge